UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO   WESTERN DIVISION

NESTOR ALVAREZ, individually and on behalf
of K.A., a child with a disability,

                              *Plaintiffs,*         COMPLAINT

        -against-

                                          Case No.

SWANTON LOCAL SCHOOL DISTRICT,

                              *Defendants.*

Nestor Alvarez, individually and on behalf of K.A., a child with a disability, by and through her attorneys, CUDDY LAW FIRM, PLLC, for her complaint hereby alleges:

1. This is an action brought pursuant to the civil action provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1415(j).

2. Plaintiffs reside in the Village of Swanton, County of Fulton, State of Ohio.

3. Plaintiff K.A. is a child with a disability as defined by IDEA, 20 U.S.C. § 1401(3)(A).

4. Plaintiff Nestor Alvarez is the parent of K.A. as defined by IDEA, 20 U.S.C. § 1401(23).

5. Defendant SWANTON LOCAL SCHOOL DISTRICT is a local educational agency as defined by IDEA, 20 U.S.C. § 1401(19), and, as such, is obligated to provide educational and related programs and services to its students in compliance with the applicable federal and state statutes, regulations, and the U.S. Constitution, and is subject to the requirements of 20 U.S.C. § 1400 *et seq.,* and the regulations promulgated thereunder.

## JURISDICTION AND VENUE

6. Jurisdiction is predicated upon 28 U.S.C. § 1331, which provides the district courts with original jurisdiction over all civil actions arising under the laws of the United States, and upon the jurisdictional provisions of IDEA, 20 U.S.C. § 1415(i)(3), which provides that the district courts of

the United States shall have jurisdiction of actions brought under section 1415(i)(3) without regard to the amount in controversy.

7.  Venue is predicated upon 28 U.S.C. § 1391(b)(1) based upon the residence of the plaintiff and defendant, and upon 28 U.S.C. § 1391(b)(2) based upon the location of the subject matter of this action.

EXHAUSTION OF ADMINISTRATIVE REMEDIES

8.  This is an appeal from a decision of a state-level review officer (SLRO) finding in favor of defendant school district following an impartial due process hearing under the IDEA.

9.  On December 11, 2017, the parent filed a due process complaint (DPC) with the district.

10.  The DPC alleged denials of a free appropriate public education (FAPE) for the 2015/16 and 2016/17 school years.

11.  At the disclosure conference, counsel for the parent indicated that he was withdrawing claims relating to the 2017/18 school year.

12.  Impartial Hearing Officer (IHO) Matthew Rohrbacher conducted hearing dates on February 8, 9, 12 and 13, 2018.

13.  At hearing, the parent requested:

a.  A finding that the district denied K.A. a FAPE during the 2015/16 and 2016/17 school years, from April 20, 2016 until March 27, 2017.

b.  Makeup academic, community and related services consistent with one year's worth of services (including summer session) of all special education and related services recommended on the March 2016 IEP;

c.  An order extending K.A.'s eligibility for special education and related services for one year after it would otherwise expire.

14.  On March 12, 2018, IHO Rohrbacher issued a decision.

15.  In his decision, the IHO addressed the following issues:

2

   a.  Failure to have all necessary IEP team member [sic];

   b.  Failure to consider continuum of services;

   c.  Failure to educate students [sic] in her least restrictive environment;

   d.  Failure to implement necessary services in homebound program;

   e.  Failure to implement transition services in the homebound program;

   f.  Failure to provide physical education in the homebound program;

   g.  Failure to provide electives in the homebound program.

16.  The IHO ruled in favor of the school district on all issues.

17.  The parents appealed the IHO's decision in its entirety to a state level review officer (SLRO).

18.  On July 6, 2018, SLRO Robert Mues issued a brief decision upholding the IHO decision in its entirety.

## FACTUAL BACKGROUND

19.  K.A. was born in 1999 and, during the 2015/16 school year, was placed at a self-contained ESC Multiple Disabilities classroom in Wauseon ("MD Unit").

20.  K.A. has been diagnosed with speech apraxia and mild mental retardation. She demonstrates deficits in cognitive, academic, communication and adaptive behavior skills.

21.  On April 13, 2015, K.A.'s father delivered a letter to the principal of Wauseon High School, expressing concerns about K.A.'s treatment by another student, J.

22.  The parent's letter stated:

> There is this boy named [J.] in one of her classes that have managed to get my daughter give our phone number and he have been calling our home to talk to her. On Saturday April 11, 2015, he called again and I ended up answering the phone. I didn't know who was calling, he asked for [K.A.] and wanted to talk to her. I asked who he was and be said his name was [J.] [J.] was very persistent wanting to speak to my daughter and forcing me to give him explanations as why I preffered [sic] not to let him speak to my daughter. I suspect that [J.] is trying make my daughter think she should have a

3

boy/girl-friend relationship by giving my daughter a ring. Him and my daughter are far from understanding what relationships means.

His annoying persistence forced me to tell him to let me speak to his parents. At first he was not cooperating with me. To my advise he finally consented me to speak to his mother. I briefly spoke with his mother and told her the situation and advised her to tell her son to stay away from my daughter. I have also told [J.] to not make any kind of contact with my daughter and assured him that I wi11 speak with the School's Principal. I will appreciate that you advise [J.] NOT to make any contact with my daughter.

My daughter's safety, her education, her success, and her happiness in life is very important to me.

23. K.A.'s father included the ring with his letter, and asked that it be returned to J.

24. On March 16, 2016, an Individualized Education Program (IEP) team convened for K.A.'s annual review.

25. The team relied upon an Evaluation Team Report (ETR) completed on March 21, 2014.

26. The team recommended individualized direct instruction and small group reinforcement from an intervention specialist, in a self-contained classroom, ten minutes daily for each of goals on through four, or 200 minutes weekly.

27. It further recommended 3.5 monthly hours of community-based instruction to apply functional daily living skills, and three monthly hours of community education outings to generalize functional skills taught in the classroom and to learn about services and resources available in the community.

28. It also recommended two weekly hours of job shadowing with a job coach to learn vocational skills, 180 monthly minutes of work training to learn vocational skills, and 120 monthly minutes of speech and language services from a speech and language pathologist.

29. Additionally, the IEP provides for 80 monthly minutes of work study in the form of small-group instruction, 30 monthly minutes of work study in the form of direct observation and corrective verbal feedback, and four monthly hours of community-based instruction including therapeutic recreation.

30. The IEP includes assistive technology and a forty-minute, monthly speech and language consultation with the classroom teacher.

4

31.  Michael Vicars, the student services director at the Swanton Local Schools, oversees special education in the district.

32.  He has been involved in developing K.A.'s programming since 2014, and testified that K. has cognitive and communications disabilities, and is a really nice kid.

33.  Mr. Vicars described the MD Unit classroom as having no more than eight students, with four paraprofessionals in the room.

34.  He testified that the individualized direct instruction was recommended because, due to K.A.'s low cognitive ability, it is appropriate to meet her needs; furthermore, community-based instruction was recommended to help her develop skills for life after school.

35.  K.A.'s ETR established that she needs speech services.

36.  Likewise, the community-based instruction including therapeutic services was intended to help K.A. develop social skills and learn to function in the community.

37.  Classroom instruction was tied to these outings; for example, math was applied to calculation of prices at the movies and otherwise, and reading to interpreting restaurant menus.

38.  Mr. Vicars testified that for K.A. to progress toward her transition goal, she would need the daily intervention specialist services, 180 minutes weekly, and 120 minutes of speech services weekly.

39.  No evaluation reports exist that conclude that K.A. does not continue to require these services to make progress toward her goals.

40.  On April 11, 2016, K.A. was sexually assaulted by J.

41.  In an interview with police on May 3, 2016, J. admitted to additional incidents of a sexual nature with K.A.

42.  K.A. did not return to school from April 12th through the end of the school year.

43.  On April 20th, the parents came to the school building to return school property, including a choir robe.

44.  The parents' appearance at the school led to an impromptu IEP Team meeting.

45. The resulting IEP stripped away all school- and community-based services, and related services, replacing K.A.'s program with four weekly hours of home tutoring.

46. Mr. Vicars, in an email dated February 17, 2017, acknowledged that "[t]his tutoring thing is worthless[]" and that K.A. "is not doing anything that is working toward graduation."

47. Mr. Vicars testified that "there's no way that girl could ever get everything she needed through a tutor that was coming to her house five hours a week when she needed all those other specially designed services that we've been talking about for the last hour."

48. He also testified that "the tutoring was never the answer."

49. On August 23, 2016, the IEP Team convened with the parents and their (former) attorney, but no IEP resulted from this meeting.

50. On August 25, 2016, the parents expressed by letter the conditions upon which they would return K.A. to school:

> You MUST provide to us a promissory document acknowledging your responsibility to protect her, to keep her safe in school and give us the list of the personnel who will be instructing her. She must not go in outings
> She must not be exposed to any computers, any kind of communication devices including I-pads. She must not be placed in a job training environment, Not that I want our child to be lazy, NO!
> I want our daughter to learn how to write, read, understand well all her subjects, and speak well.
> Last. either my wife or myself will transport her to school and back home. She must stay in the office until we pick her up. We do NOT authorize anyone to pick her up unless there is a written consent from us, her parents.

51. The district refused to commit in writing to keeping K.A. safe in school.

52. On September 21, 2016, Mr. Vicars attempted to secure speech services for K.A., as he believed that the district owed her 120 minutes per month of speech.

53. Following discussion with the speech and language pathologist and an intervention specialist, the district staff concluded that the IEP would need to be amended to provide for speech.

54. Despite this, and K.A.'s uncontroverted need for speech services, the district did not amend the IEP.

6

55.  K.A. did not return to school until March 2017.

56.  Mr. Vicars testified:

> Q So it's fair to say that [K.A.] was not receiving FAPE in 2015–'16 at the end of the
> year and 2016–'17 through March?
> A Absolutely.
> …
> I've said that more than once.

## FIRST CAUSE OF ACTION

57.  Plaintiffs repeat and reallege paragraphs 1 through 56 as if more fully set forth herein.

58.  The actions of the Swanton Local School District denied K.A. a free appropriate public education.

59.  The IHO and SLRO erred in finding that the defendant provided K.A. with FAPE for the period at issue.

60.  The IHO and SLRO erred in denying the relief requested by the parent.

61.  The parent, Nestor Alvarez, now appeals the SLRO's decision to this Court.

WHEREFORE, plaintiffs respectfully request that this Court:

(1)      Assume jurisdiction over this action;

(2)      Find that the IHO and SLRO erred in determining that defendant provided K.A. with a FAPE during the period at issue;

(3)      Issue an order granting the relief requested in the DPC;

(4)      Award to the plaintiffs the costs, expenses and attorneys' fees of this action pursuant to 20 U.S.C. § 1415; and

(5)      Grant such other and further relief as the Court deems just and proper.

Dated: Auburn, New York
    July 31, 2018

Yours etc.,

s/ Andrew K. Cuddy

CUDDY LAW FIRM, PLLC
Andrew K. Cuddy, Esq.
*Attorneys for Plaintiff*
6100 Oak Tree Boulevard, Suite 200
Independence, Ohio 44113
(315) 370-4020
acuddy@cuddylawfirm.com