# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Nestor Alvarez, individually and on behalf
of K.A., a child with a disability

Case No. 3:18CV1768

                    Plaintiff,

            v.                                    **ORDER**

Swanton Local School District,

                    Defendant.

This is a case brought on behalf of K.A., a multi-handicapped student, against Swanton Local School District under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400, *et seq.*

Plaintiff, K.A.'s father[1] alleges that the District deprived K.A. of a free and appropriate public education (FAPE) to which she is entitled. Pending is plaintiff's motion for summary judgment. (Doc. 26). For the following reasons, I deny the Plaintiff's motion for summary judgment.[2]

---

[1] Nestor Alvarez, K.A.'s father, is the named plaintiff on behalf of K.A. Her mother is not a plaintiff.

[2] Neither party has suggested that the pertinent facts are in dispute. If that is so, the defendant shall have leave to file a motion for summary judgment on or before June 1, 2020, if it desires to do so. If it does, plaintiff shall respond on or before July 1, 2020, and defendant shall reply on or before July 15, 2020.

**Factual Background**

K.A. was born in 1999 to parents Dawn and Nestor Alvarez. Doc. 33, PageID 1121[3]. She has multiple disabilities including mild mental retardation and apraxia. *Id.,* PageID 1173. Speech apraxia is a processing disorder that causes individuals to have difficulty expressing in words what they are thinking. Doc. 34, Tr. Jahn, PageID 1971.

Results from K.A.'s 2014 and 2017 Evaluation Team Reports (ETRs) show scores in the lower extreme to the below average range for cognitive function as compared to her same aged peers. Doc. 33, PageID 1175-176; PageID 1252. She demonstrates deficits in her cognitive, academic, communication, and adaptive behavior skills. *Id*., PageID 1172.

K.A. received intervention services, including classroom instruction, occupational therapy, and speech-language services beginning in preschool. *Id.*, PageID 1172. In 2005, she was eligible to receive school-age special education services as a student with a cognitive delay. *Id.* After K.A.'s re-evaluation in 2008, she became eligible to receive special education services as a student with multiple disabilities. *Id.* She continued to receive speech and language services, but occupational therapy was discontinued. *Id.* In second grade, K.A. began attending classes by the Education Services Center ("ESC") in Wauseon. *Id.*

K.A. began her 2015-16 sophomore school year attending a self-contained multiple disabilities program at Wauseon High School (ESC MD program), an educational unit based on a functional academic and daily living skills curriculum. *Id.* at PageID 1122.

---

[3] The administrative record was submitted to ECF and paginated along the top of each page. Citations to the record will refer to the document number and PageID number. Citations to transcripts will include the name of the person being examined.

### 1. IEP – March 2016

On March 16, 2016, K.A.'s IEP team met with her parents for an annual review. *Id.* at PageID 1121. The IEP team and K.A.'s parents agreed to her continued placement at the ESC MD program. Her services included: 1) individualized direct and small group instruction on functional academics, daily living skills, and vocational skills; 2) community based instruction to apply functional and daily living skills; 3) community education outings; 4) job shadowing with a job coach; 5) work training to learn vocational skills; and 6) speech and language services. *Id.* at PageID 1137. The IEP team determined that extended school year (ESY) services were not necessary. *Id.* at PageID 1317.

### 2. Plaintiff Removes K.A. From ESC MD Unit

In April 2015, a male student, J.T., in the ESC MD program called Plaintiff's home to speak with K.A. Doc. 35, Tr. Alvarez, PageID 2387. Plaintiff would not allow him to speak with K.A. and told J.T.'s mother to never let J.T. contact, call, or speak to K.A. again, even while at school. *Id.,* Tr. Alvarez, PageID 2388.

Plaintiff sent a letter to Wauseon High School's Principal Keith Leatherman stating that J.T. was trying to have a relationship with his daughter and asked him to tell J.T. to not have contact with K.A. Doc. 32, PageID 915. Principal Leatherman spoke with J.T. and his teachers about the issue. Doc. 35, Tr. Alvarez, PageID 2132.

In April 2016, K.A.'s brother found messages between K.A. and J.T. containing sexual content. *Id.,* Tr. Alvarez, PageID 2392. Very upset, Plaintiff took the iPad away from K.A. and told her to not have contact with J.T. *Id.*, Tr. Alvarez, PageID 2393.

On April 11, 2016, Plaintiff kept K.A. home from school, believing there had been inappropriate contact between K.A. and J.T. Mr. Alvarez spoke with the police. Doc. 35, Tr. Alvarez, PageID 2407.

On April 20, 2016, K.A.'s parents went to Wauseon High School to return school property. By this time, K.A. had been absent from school for over a week without excuse. Doc. 32, PageID 1010. Several members of K.A.'s IEP team met with her parents to discuss K.A.'s attendance at ESC MD. Doc. 33, PageID 1145. Plaintiff was adamant that he would never allow K.A. to return to the ESC MD program. Doc. 35, Tr. Alvarez, PageID 2413.

Mike Vicars, the student services director at Swanton Local Schools, oversees the special education programs. Doc. 34, Tr. Vicars, PageID 1489. He attended this last-minute meeting by phone. *Id.*, Tr. Vicars, PageID 1561.

Rather than pursue truancy proceedings for K.A.'s non-attendance, *id.* at T. Vicars, PageID 1618, the team agreed to place K.A. on home instruction. Doc. 33, PageID 1145 ("Home Instruction will begin 4-21-16 due to parent's withdrawing [K.A.] from her current placement due to pending legal matters. Instruction will include one on one tutoring 4 hours a week for the remainder of the school year").

The District agreed to the change in placement at that time because the parents were very upset. Doc. 34, Tr. Vicars, PageID 1621; *Id.*, Tr. Marvin, PageID 1909 ("He was very upset. Very upset. Visibly upset, crying, making some derogatory remarks")[4].

The District understood this arrangement to be temporary. Doc. 33, PageID 1147 ("We will review prior to the beginning of the 2016-2017 school year"). The parents apparently agreed, penning their initials by this statement. *Id.* The tutor, a certified teacher, taught K.A. for the

---

[4] K.A.'s father repeatedly referred to J.T. as a monster, a pedophile, a sexual predator, and a pervert; he also accused Wauseon's ESC MD unit of pimping out his daughter.

4

remainder of the school year under the direction of K.A.'s interventional specialist. Doc. 32, PageID 1019-23.

### 3. 2016-17 School Year

On August 23, 2016, the parents and their former legal counsel met with the director of student services, two interventional specialists, the school principal, and the assistant principal to discuss K.A.'s placement. Doc. 33, PageID 1163. The District proposed that K.A. return to the ESC MD classroom at Wauseon High School because it was the least restrictive environment and fit K.A.'s academic and functional needs. *Id,* at PageID 1162. The District also proposed an alternative solution: send K.A. to Swanton High School, with a one on one attendant to address safety concerns, in a cross-categorical classroom. *Id.* The parents did not agree with either proposal and requested home instruction for five hours per day and related services. *Id.*

The parents' attorney stated that the parents would be in touch after he discussed the options proposed by the District. *Id.* The parents received a PR-01, a written notice summarizing the discussion.

Mr. Alvarez wrote a letter addressed to Mike Vicars and K.A.'s intervention specialist, Courtney Duncan, dated August 25, 2016, stating the conditions under which they would allow K.A. to attend Swanton High School: 1) Vicars and Duncan must sign a promissory document acknowledging their responsibility to protect K.A. and keep her safe at school; 2) provide a list of all K.A.'s instructors; 3) K.A. is not allowed to attend outings; 4) K.A. is not to be exposed to any computers or any kind of communication devices, including iPads; 5) K.A. cannot be placed in a job training environment; and 6) the attendant must meet K.A. when parents bring her to school in the morning and must escort K.A. to the parents at the end of the school day. Doc. 32, PageID 920-21.

This letter prompted the District to meet with the parents again to discuss K.A.'s placement. On September 6, 2016, the District proposed the cross-categorical classroom with a one on one attendant again and described the class structure. Doc. 33, PageID 1164. The parents also received information regarding a scholarship as an alternative if parents chose to pursue other options. *Id.*

The District declined to sign the promissory note but agreed to the limits on access to technological devices, community outings, and job training to get K.A. back to school. Doc. 34, Tr. Vicars, PageID 1634-35. Her parents requested more time to discuss the proposed options. *Id., Tr. Vicars, PageID 1637. In the meantime, the District agreed to continue K.A.'s home instruction with a tutor. Id., Tr. Vicars, PageID 1638. The parents liked the home instruction teacher and had no complaints about her. Doc. 35, Tr. Alvarez, PageID 2467.

In October, Mike Vicars attempted to amend the IEP to include speech services but was not able to get in touch with the parents. *Id.*, Tr. Vicars, PageID 1641. ("The month of October was a pretty dead period of communication").

In November, the parents informed the District that they had retained a new attorney, Andrew Pappert. *Id.* Tr. Vicars, PageID 1642. Vicars spoke with the attorney just before Thanksgiving. *Id.,* Tr. Vicars, PageID 1643. Vicars was unable to reach the attorney after this conversation and requested mediation through the Ohio Department of Education. *Id.,* Tr. Vicars, PageID 1646.

Vicars then received a call from the attorney, and they discussed that the IEP and ETR were set to expire and that a new evaluation needed to take place. *Id.*, Tr. Vicars, PageID 1649. In a follow-up email to the attorney, Vicars proposed that the IEP team and parents meet between January 4 and January 6, 2017. *Id.* The attorney did not respond to this email. *Id.,* Tr. Vicars, PageID 1650.

6

### 4. March 2017 IEP

On March 8, 2017, parents, their attorney, and K.A.'s IEP team met to prepare, review, finalize, and sign an updated ETR and IEP. Doc. 33, PageID 1211. After an involved discussion of placement options and the parents' continued reservations about K.A. attending public high school, parents and the IEP team agreed that K.A. would attend Swanton High School with a one on one attendant. *Id.* at PageID 1237.

The 2017 IEP did not provide for additional tutoring or ESY services but the District continued to provide five hours of weekly home instruction through the summer until the beginning of the 2017-18 school year. Doc. 32, PageID 1035-55. The District was also willing to provide speech services beyond those in the IEP. Doc. 35, Tr. Vicars, PageID 2609. The plaintiff's attorney agreed to submit a proposal of the type, number of hours, and timing of any additional speech services but he failed to do so. *Id.* The District's proposal to provide additional speech language services remains outstanding.

### Procedural Background

On December 12, 2017, Mr. Alvarez submitted a demand for a due process hearing before an Impartial Hearing Officer ("IHO"), alleging that K.A. was denied a free and appropriate public education. Doc. 29, PageID 267. Between March 8, 2017 and December 11, 2017, the parents did not raise any concerns about K.A.'s program at Swanton High School, the continued home instruction, or the additional speech services the District offered. *Id.,* Tr. Vicars, PageID 2610.

Plaintiff made the following claims:

1. Failure to provide an appropriate program and placement (2016-17 school year):

        a. Failure to have all necessary IEP team members;
        b. Failure to consider continuum of services;
        c. Failure to educate student in her least restrictive environment;
        d. Failure to implement necessary services in the homebound program;

      e. Failure to implement transition services in the homebound program;
      f. Failure to provide physical education in the homebound program;
      g. Failure to provide electives in the homebound program.

2. Failure to provide appropriate program and placement (2017-18 school year);[5]

3. Failure to offer appropriate transition services;

4. Failure to provide ESY services;

5. Failure to provide speech language services;

6. Failure to provide assistive technology device or services; and

7. Failure to appropriately evaluate the student.

On March 12, 2018, the IHO found in favor of the District on all of the parents' claims. *Id.* at PageID 320. Most crucially, he determined that the parents removed K.A. from the ESC MD program on April 11 or 12, 2016. He made other findings as well, namely: on April 20, 2016, the District and parents agreed to amend her IEP from the ESC MD program and related services to home instruction. Swanton Local hired a tutor for K.A.'s home instruction. The tutor worked with one of K.A.'s intervention specialists from the ESC MD program to best address K.A.'s needs.

The District made efforts to get K.A. back into the ESC MD program and also proposed a suitable program at Swanton High School. The District proposed these two options to Plaintiffs at meetings in August and September 2016. The parents refused to place K.A. back into the school setting until March 2017. Plaintiff would not consider options that he subjectively and unilaterally believed would put his daughter in harms way. There is, however, no testimony or other evidence in the record by any third party that would support the plaintiff's belief that his daughter was in danger.

---

[5] This issue was withdrawn at the disclosure conference held on January 22, 2018. Doc. 34, Tr. Discl. Conf., PageID 1389.

While on home instruction, K.A. made progress towards some of the goals in her IEP. The IHO concluded that procedural problems did arise but that the problems were not substantive as to rise to the level of a violation of FAPE. Finally, the IHO concluded that the plaintiff was not entitled to any relief because his actions frustrated the efforts of Swanton to provide K.A. an education in the least restrictive environment. Doc. 29, PageID 300-22.

On April 25, 2018, Plaintiff filed a notice of appeal to the IHO's opinion.

The State Level Review Officer (SLRO) agreed with the IHO, finding that the parent unilaterally withdrew K.A. from the ESC MD program, the District and parents agreed to the amended IEP, members of the IEP team discussed placement options for the 2016-17 school year with the parents in August and September 2016, the parents did not consent to any proposed placements until March 8, 2017. He found that, while procedural violations were committed, the violations did not amount to the denial of FAPE. Doc. 31, PageID 846-53.

On July 31, 2018, the Plaintiff filed a complaint with this court requesting that I find that the IHO and SLRO erred in finding that the defendant District provided K.A. with FAPE, fees and costs pursuant to 20 U.S.C. § 1415, and the relief requested in the due process complaint, namely compensatory education services along with reasonably attorney fees and expenses. *See* Doc. 29-1, PageID 277.

On January 6, 2020, the Plaintiff filed a motion for summary judgment. Plaintiff argues that the procedural violations of the IDEA were substantive so as to be considered a denial of FAPE.

**IDEA and OAC Framework**

In exchange for federal funds to assist in educating children with disabilities, the IDEA requires the State to, among other things, provide a FAPE to all eligible children. 20 U.S.C. § 1412(a)(1).

A FAPE includes both special education—"specially designed instruction…to meet the unique needs of a child with a disability"—and related services—"support services required to assist a child…to benefit from" that instruction. § 1401(26), (29). The State must provide a disabled child with such education and services in conformity with the child's IEP. § 1401(9)(D).

The IEP is a comprehensive plan prepared by a child's IEP team and parents. § 1414(d)(1)(B). The IEP must be prepared in compliance with a set of procedures that require careful consideration of the child's individual circumstances and emphasize collaboration among parents and educators. § 1414.

The Supreme Court has made clear that the Act guarantees a substantively adequate program of education to all eligible children. *Board of Ed. Of Hendrick Hudson Central School Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 200-202 (1982). A child has received a FAPE if the child's IEP sets out an educational program that is "reasonably calculated to enable the child to make progress in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas County School Dist. RE-1*, 137 S.Ct. 988, 999. The question is "not whether the court regards it as ideal," but rather, "whether the IEP is *reasonable*." (emphasis in original). *Id.*

**Standard of Review**

Section 1415(i)(2)(C) provides for a "modified de novo" standard of review. When an IDEA action is filed in federal court, the district court receives the record of administrative

10

proceedings, hears additional evidence at the request of either party, and grants such relief as the court determines is appropriate.

District courts make an independent decision based on the preponderance of the evidence but should give 'due weight' to the administrative officers' determinations. *Deal v. Hamilton Cnty. Bd. Of Educ.,* 392 F.3d 840, 849 (6th Cir. 2004). The court gives less weight to determinations for which educational expertise is not relevant. *McLaughlin v. Holt Pub. Schs. Bd. of Educ.*, 320 F.3d 663, 669 (6th Cir. 2003). Courts give more weight to agency determinations for which educational expertise is relevant. *Id.*

I may not "simply adopt the state administrative findings without an independent re-examination of the evidence," *Knable ex rel. Knable v. Bexley City School Dist.,* 238 F.3d 755 (6th Cir. 2001) (quoting *Doe v. Metropolitan Nashville Public Schools*, 133 F.3d 384, 387 (6th Cir. 1998)), nor may I "substitute [my] own notions of sound educational policy for those of the school authorities." *Rowley* at 206.

### Law & Analysis

A District court reviews for both procedural and substantive violations. As the Sixth Circuit states, the two-step review is as follows:

> The court must first determine whether the school complied with the IDEA's procedural requirements. [*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v.*] *Rowley*, 458 U.S. at 206. This is an inquiry into the "process by which the IEP is produced, rather than into the myriad of technical terms that must be included in the written document," *Doe v. Defendant I,* 898 F.2d 1186, 1190 (6th Cir. 1990), or into mere technical violations, which do not provide a basis for invalidating the IEP, *Dong v. Bd. of Educ. of Rochester Cmty. Sch.,* 197 F.3d 793, 800 (6th Cir. 1999). *** If the procedural requirements are satisfied, the court grants greater deference to the State [hearing officer's] determinations on the second step, the substantive analysis. *Id.* In the second step, the court must decide whether the IEP's substantive educational plan was "reasonably calculated to enable a child to make progress appropriate in light of

11

the child's circumstances." Endrew F. [v. Douglas Cty. School Dist.] 580 U.S. ——, 137 S.Ct. 988 999, 197 L.Ed.2d 335 (2017) (endorsing and narrowing Rowley, 458 U.S. at 206-07, 102 S.Ct. 3034); accord Deal, 392 F.3d at 862.

*L.H. v. Hamilton County Dep't of Educ.,* 900 F.3d 779, 790-91 (6th Cir. 2018).

Where a procedural violation occurred the inquiry is whether the violation caused substantive harm to either the parents or the child. *Knable* at 764. If so, the violation constitutes a denial of FAPE. *Id.*

Plaintiff contends that procedural violations occurred during the April 20, 2016 meeting when the parents and the District amended K.A.'s IEP. Specifically, he argues that the following are procedural violations:

1. Mr. Vicars and a general education teacher were absent from the meeting;

2. The meeting occurred without notice to the parents;

3. K.A., at an age where she qualifies for transition services, was not invited to the meeting; and

4. The parents were not offered counseling and training services.

The IDEA provides a process for amending an IEP after the annual IEP team meeting. Rather than requiring an entire IEP team to convene, the parent and the school district can "develop a written document to amend or modify the child's current IEP." C.F.R. § 300.324(a)(4)(i). I conclude that the April 20, 2016 meeting was simply a meeting to amend the IEP; there was, therefore, no procedural violations. Since Mr. Vicars was providing input by telephone during the meeting, the claim that his absence violated the IDEA is also without merit.

My decision in *Horen v. Board of Educ, of City of Toledo School Dist.,* 948 F. Supp. 793 (N.D. Ohio 2013) is instructive. In that case I determined that parents failed to fulfill their duty to participate in the IEP process, making the parents responsible for lack of FAPE. I held that where

a party has acted to frustrate the formation of an IEP, the district court must consider the totality of the circumstances when adjudicating a parent's claim that the IEP deprived the child of FAPE.

This is not a case where the District simply failed to develop an IEP that provided K.A. with free and appropriate public education. Instead, the District develop a 2015-16 IEP that provided FAPE and related services. Then it amended the IEP at the request—nay—the demand of the parents after they did had, for more than a week kept K.A. from attending the ESC MD program.

At the time of the amendment only four weeks remained in the school year. The District nonetheless wanted to have a plan in place. The District and the parents agreed to revisit the issue for the 2016-17 school year.

Vicars hoped this "cooling-off" period would result in K.A.'s return to the ESC MD program. The District provided four hours of weekly home instruction through a qualified teacher; she provided instruction to K.A. at the direction of K.A.'s interventional specialist. It appears that the District made extraordinary efforts to provide education to K.A. and to accommodate Mr. Alvarez's insistence, unreasonable though it was[6], that his daughter would be in danger if placed in a public setting with other students.

Despite these efforts on the District's part, plaintiff faults the District for providing home instruction, as he had consistently demanded, and for not forcing him to agree to a more appropriate placement. While the District, as it admits, could have filed either a due process hearing request, or, in Juvenile Court, could have filed either a truancy complaint against K.A., or, more stringently,

---

[6] The City Prosecutor for Wauseon, Ohio personally sent a letter to K.A.'s parents on May 10, 2016, stating that based on his review of the incident report, witness statements, photographs, and messages between K.A. and J.T., he concluded that the evidence would not support a criminal conviction, nor was there sufficient probable cause to charge him. Doc. 32, PageID 956.

charges against plaintiff for keeping K.A. from school, it wanted to make an interim change to maintain some manner of a good relationship with the family.

The District, under the continuing belief that the home instruction was temporary, met with the parents on August 23, 2016 to discuss returning K.A. to the ESC MD program for the upcoming school year. Alternatively, it wanted to place her in Swanton High School in a cross-categorical classroom with a one to one aide. The parents, however, remained very reluctant about anything other than home instruction. The August 23rd meeting ended when the parents requested time to consider the District's options. In the meantime, the District increased home instruction to five hours per week.

In the August 25, 2016 letter, the plaintiff demanded certain conditions before the parents would consider returning K.A. to school, prompted another meeting with the parents. Again, the District proposed the same two options and again, the parents requested some time to review those options. The parents made no further contact until November, and then only to notify the district that they had retained another attorney.

Vicars spoke with that attorney and felt confident that progress was being made towards getting K.A. back to school. The District then sought to contact the attorney again multiple times, but the lawyer was busy. Seeing progress stalled, the District requested mediation in December 2016. Only then did the attorney respond to the District. But efforts at mediation did not ensue.

Vicars attempted to set up meetings with the parents and the attorney in January 2017. But the attorney was too busy. Finally, when K.A.'s ETR and IEP were about to expire, the IEP team and the parents and their attorney met. On March 8, 2017, the team completed the evaluation and turned to preparing the IEP.

Plaintiff requested private tutoring, but Vicars stated that the school would not pay for that option. The IEP team and the parents ultimately decided to send K.A. to Swanton High School and, to accommodate the parents' fears for K.A.'s safety, to provide a one to one aide.

The parents remained concerned about K.A.'s access to communication devices and computers so the team agreed that K.A.'s use of a computer would only occur if the one to one aide sat with K.A. the entire time.

The District also offered speech and language services beyond those in her 2017 IEP allowed. The parents' attorney never provided a proposed schedule, as he stated he would. The District's offer remains outstanding.

Plaintiff also complains that K.A.'s home instruction was not the least restrictive environment. The least restrictive environment refers to the preference to mainstream disabled students and educate them with nondisabled children to the extent appropriate. 20 U.S.C. § 1412(a)(5).

Simply put, the parents' unrelenting demand that K.A. receive home instruction clashed with the requirement that placement be in the least restrictive environment. The record is to the contrary: the IEP team discouraged the parents from removing their daughter from an in-school setting and substituting home instruction *because* it was not the least restrictive environment. But the parents remained adamant and unyielding in their subjective demands that K.A. receive home instruction.

Plaintiff has the burden here of proving by a preponderance of the evidence that the District denied K.A. a free and appropriate public education. Based on the totality of the circumstances before the IHO and SLRO, I find that those officers correctly determined that, during the four weeks remaining in the 2015-16 school year, K.A. received a free and appropriate public education

that was reasonably calculated to enable her to make progress in light of her circumstances. I also readily agree that the record convincingly shows the parents, by steadfastly refusing to bring K.A. to school, on their own defeated that objective. They thereby caused the District to implement the more restrictive option of home instruction.

As it relates to the beginning of the 2016-17 school year: in the face of the parents unrelenting demands, the District proposed two FAPE-suitable placements during August and September 2016. Those meetings concluded with the parents requesting time to consider the options. Despite the District's numerous efforts to get a response from the parents, an agreement as to K.A.'s placement did not occur until the March 8, 2017 ETR and IEP meeting. Ultimately, K.A.'s parents agreed to a placement that addressed their safety concerns, which was what the District proposed in August of 2016.

Had the parents agreed to this proposal sooner, K.A. would have been attending classes at Swanton High School when the 2016-17 school year began. The logical conclusion is not that the District failed to provide FAPE to K.A., but that the parents unreasonably prevented it from doing so.

Additionally, plaintiff requests compensatory education in the form of speech and language services for the alleged denial of FAPE. Since I have determined that the District did not, procedurally or substantively, deny FAPE to K.A., I do not find that plaintiff is entitled to compensatory education. However, I suggest that the plaintiff take advantage of the District's outstanding offer to provide speech and language services over and above the provisions in her IEP.

16

**Conclusion**

Plaintiff failed to prove by a preponderance of the evidence that the defendant District denied K.A. a free and appropriate public education. It is, accordingly, thereby

ORDERED THAT plaintiff's motion for summary judgment (Doc. 26) be, and the same hereby is denied.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge